NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL J. GODLEY,<br><br>        Plaintiff,<br><br>    v.<br><br>NEWARK POLICE DEPARTMENT, et. al.,<br><br>        Defendants. | CIVIL NO. 05-806 (SRC)<br><br>**OPINION** |

**CHESLER, District Judge**

**THIS MATTER** comes before the Court on the motions for summary judgment brought by Defendants City of Newark ("City") and the Newark Police Department ("Police Department") [docket # 35]; the Newark Housing Authority ("NHA") [docket # 37]; and Officer David Lamarr ("Lamarr") [docket # 41]. The Plaintiff filed an omnibus opposition to these motions [docket #57], and the Defendants all submitted replies. [docket # 64, 67, 72]. The Court, having considered the papers submitted, for the reasons set forth below, and for good cause shown, **GRANTS** the motions of the City and the Housing Authority in their entirety and **DENIES** the motion of Officer Lamarr.

## I.    Factual and Procedural Background

On July 27, 2003, around 5 a.m., Plaintiff Paul Godley arrived at the Steven Crane Apartments in Newark, NJ to visit a friend of his. His friend was not at home, and Godley instead decided to visit Ada Vasquez, who worked as a security guard at

the Steven Crane Apartments.  Godley walked over to 789 North 6th Street in Newark, where Ms. Vasquez worked.  Once Godley arrived at the building, he found Officer Lamarr speaking with Ms. Vasquez, and asked that Officer Lamarr come outside and talk to Godley after Lamarr finished his conversation with Ms. Vasquez.  Officer Lamarr was employed by the City as a police officer in July 2003, and was assigned to the Steven Crane Apartments, but Officer Lamarr's shift had ended at 4:00 a.m. and he was off-duty while visiting with Ms. Vasquez.

The exact circumstances of the events that followed the argument are hotly contested.  Plaintiff contends that Lamar came outside, appearing angry and with an aggressive tone in his voice.  Plaintiff calmly asked Lamarr to leave Ada Vasquez alone, but Lamarr responded angrily.  Plaintiff claims that Lamarr began screaming at Godley, cursing at him, and threatening to kill him.  Plaintiff responded that he was willing to fight Lamarr, and the two continued to argue.  Ada Vasquez moved Lamarr away and into his van, but Lamarr kept yelling and screaming at Godley.  Then, exiting his van, Lamarr pushed Ada Vasquez out of the way, cursed at Godley, and shot Paul Godley.  Godley claims he was visibly unarmed and was putting his arms up to surrender when he was shot.  He further claims that he never struck or made contact with Officer Lamarr prior to the shooting, nor did he threaten to physically assault Lamarr.

Officer Lamarr tells a very different story.  He contends that Plaintiff was angry and upset and sought out Lamarr to confront him.  Lamarr tried to go to his vehicle and leave the scene, but Plaintiff followed him and continued to challenge and threaten Lamarr.  At that point, Lamarr approached Plaintiff, identified himself as a police officer,

and order Plaintiff to freeze.  Within seconds of Officer Lamarr raising his weapon, Plaintiff moved his hands from his waist area.  Feeling threatened, Officer Lamarr fired one shot.

It is uncontested that the day after the shooting, Lamarr was arrested and was charged with attempted murder.  Lamarr pled "Not Guilty" and was released on bail. Later, Lamarr was also charged with aggravated assault and weapons offenses. Lamarr was tried by a jury in New Jersey Superior Court in February, 2005, and was acquitted of all charges.

On November 15, 2004, Godley filed a five count complaint in the Superior Court of New Jersey, Law Division, Essex County asserting claims arising from the July 27, 2003 shooting.  The complaint asserted alleged assault and battery and violations of Godley's constitutional rights against all Defendants (count one); negligent hiring, supervision, and training, as well as negligent performance of duties by the Police Department and City (count two); negligence by the NHA in failing to provide proper security (count three); and additional constitutional violations stemming from discriminatory conduct against the Plaintiff by all Defendants (count four).

The complaint was served on the City on January 12, 2005.  On February 10, 2005, the City filed a Notice of Removal, removing the case to the United States District Court, District of New Jersey. [docket #1].  On June 23, 2006, the City, the NHA, and Officer Lamarr filed the present motions for summary judgment.

## II.    Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

- 3 -

Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

*Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996).  In deciding

whether there is a disputed issue of material fact, the Court must view the underlying

facts and draw all reasonable inferences in favor of the non-moving party.  *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Penn. Coal*

*Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).  The threshold inquiry is whether

there are "any genuine factual issues that properly can be resolved only by a finder of

fact because they may reasonably be resolved in favor of either party."  *Anderson v.*

*Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).

Once the moving party has properly supported its showing of no triable issue of

fact and of an entitlement to judgment as a matter of law, the non-moving party "must

do more than simply show that there is some metaphysical doubt as to material facts."

*Matsushita*, 475 U.S. at 586; *see also Anderson*, 477 U.S. at 247-48.  The non-moving

party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions,

answers to interrogatories, and admissions on file,' designate 'specific facts showing

that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324; *Big Apple BMW, Inc.*

*v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue

of material fact . . . the [non-moving party] need not match, item for item, each piece of

evidence proffered by the movant," but rather "must exceed the 'mere scintilla'

threshold").

III.   **City of Newark and Newark Police Department**

Plaintiff argues that his Fourth Amendment rights were violated by the excessive

force used by Officer Lamarr and that the Police Department and the City should be held liable for this violation under state and federal law.  Plaintiff's allegations against the City and the Police Department are contained in Counts Two and Four of the Complaint.  In Count Two, Plaintiff alleges that the Police Department and the City are liable, under federal law, because they "were negligent, careless, and/or reckless in the supervision, control and/or training of police officers... and/or unreasonably reprimanded, controlled, or supervised police officers... and/or maintained a policy and/or custom of offensive conduct so as to deprive plaintiff of his constitutional rights." Pl.'s Comp. at 3.  In Count Four, Plaintiff alleges that the Police Department and the City "ratified and/or permitted unconstitutional conduct of police officers" and "willfully and intentionally discriminated against the plaintiff.  Plaintiff also alleges, in Count Two, claims against the City arising under New Jersey state law– negligent hiring, negligent training, and negligent supervision.

The City has moved for summary judgment on Plaintiff's Section 1983 and discrimination claims against the City and the Police Department, as well as Plaintiff's state law claims of negligent hiring, supervision, and training.

A.    The City is Entitled to Summary Judgment on All Claims Alleged Against the Newark Police Department.

All of Godley's claims against the Police Department must be dismissed because the Police Department cannot properly be sued.  "In Section 1983 actions, police departments cannot be sued in conjunction with municipalities because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity."  *Padilla v. Twp. of Cherry Hill*, 110 Fed. Appx. 272, 278 (3d Cir.

2004) (citing *DeBellis v. Kulp*, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001)).  The state law tort claims alleged against the police department must be dismissed for the same reasons.  *See* 17 N.J.S.A. 40A:14-118 (stating that New Jersey police departments are "an executive and enforcement function of municipal government.").  Because the Police Department is merely an arm of the City, summary judgment is granted to the Police Department on all claims.

      B.    <u>The City of Newark is Entitled to Summary Judgment on All of Plaintiff's Constitutional Claims</u>.

Plaintiff alleges, in Counts Two and Four of the Complaint, that the City is liable, under 42 U.S.C. § 1983, for its hiring, training, and supervision of Officer Lamarr.  The City has moved for summary judgment on these claims, as well as the claim of discrimination contained in the Fourth Count of Plaintiff's complaint.  Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States.  *See, e.g.*, 42 U.S.C. §1983; *Inyo County v. Paiute-Shoshone Indians*, 538 U.S. 701, 708 (2003).  Unlike incorporated police departments, municipalities are legal entities amenable to suit for their unconstitutional polices or customs.  *See, e.g., Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  However, a municipality cannot be responsible for damages under section 1983 solely because it employs a tortfeasor, Monell, 436 U.S. at 694-95, and "can be found liable under §1983 only where the municipality *itself* causes the constitutional violation at issue."  *Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also Carswell v. Homestead*, 381 F.3d 235, 244 (3d Cir. 2004).  The District Court must review claims of municipal

liability "independently of the section 1983 claims against the individual police officers,"
*Carswell*, 381 F.3d at 244, for it is only "when execution of a government's policy or
custom, whether made by its lawmakers or by those whose edicts or acts may fairly be
said to represent official policy, inflicts the injury that the government as an entity is
responsible under § 1983." *Monell*, 436 U.S. at 694.  So, while a city "is not vicariously
liable under § 1983 for the constitutional torts of its agents," *Collins v. Harker Heights*,
503 U.S. 115, 122 (1992), it can be held liable when an employee acts
unconstitutionally and the municipality failed to adequately train or supervise that
employee.  *Padilla*, 110 Fed. Appx. at 278-79 (citing *Canton*, 489 U.S. at 380).

   In order to establish municipal liability, a plaintiff must demonstrate not only that
a constitutional violation occurred, but must "identify a municipal policy or custom" and
demonstrate that such policy was the "moving force" behind the constitutional violation.
*Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 399, 403-404 (1997); *see also
Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006).  A court's "first inquiry in any case
alleging municipal liability under § 1983 in the question of whether there is a direct
causal link between a municipal policy or custom and the alleged constitutional
deprivation."  *Canton*, 489 U.S. at 385.  Where, as here, "a plaintiff claims that a
municipality has not directly inflicted an injury, but nonetheless has caused an
employee to do so, rigorous standards of culpability and causation must be applied to
ensure that the municipality is not held liable solely for the actions of its employee."
*Brown*, 520 U.S. at 405.  A plaintiff "seeking to establish municipal liability on the theory
that a facially lawful municipal action has led an employee to violate a plaintiff's rights

must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Id*. at 407.  With these principles in mind, the Court turns to Plaintiff's four constitutional claims: (1) improper hiring; (2) inadequate training; (3) inadequate investigation and supervision; (4) discrimination.

        1.    *Improper Hiring*[1]

First, Plaintiff alleges that the City should not have hired Officer Lamarr because he was psychologically unfit to serve as a police officer and that the City failed to adopt a policy to prevent the hiring of officers who were psychologically unfit.  Pl.'s Br. at 54-55.  This "improper hiring" essentially asserts two separate claims: (a) inadequate screening of Officer Lamarr and (b) inadequate policies and procedures for psychological testing.  The City is entitled to summary judgment on both of these claims.

The first of these claims is controlled by the Supreme Court's decision in *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397 (1997), which discussed the requirements for municipal liability in the context of claim of wrongful hiring.  The plaintiff in Brown alleged that the Sheriff had hired the officer in question, Burns, without having closely reviewed his record.  The record showed that Burns had pled guilty to driving infractions, assault and battery, resisting arrest, and public drunkenness.  *Brown*, 520 U.S. at 401.  The plaintiff in Brown was not arguing that the Sheriff's hiring practices

_____

[1]Defendants argue that summary judgment should be granted on the claim solely because this claim was not adequately plead in Plaintiff's complaint.  Because the Court grants summary judgment in the City's favor, it finds it unnecessary to examine the adequacy of the complaint as to this claim.

were generally defective, but was claiming "a deviation from Sheriff Moore's normal hiring practices"– essentially a failure to screen out an inappropriate applicant. *Id*. at 408.  The Court found that, to establish municipal liability for Burn's use of excessive force, plaintiff had to demonstrate that "adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." *Brown* at 411.  Only then can an official's failure to adequately scrutinize the applicant's background constitute deliberate indifference.  The Court concluded that Burns' use of excessive force was not a plainly obvious consequence of the decision to hire him, and therefore the municipality was not liable for the decision to hire Burns without adequate screening.

Plaintiff Godley cannot meet the high threshold set forth by Brown.  The link between Lamarr's background and the risk that, if hired, he would use excessive force, is tenuous at best.  It is undisputed that, as part of the hiring process, the Institute of Forensic Psychology conducted a psychological examination of David Lamarr on January 22, 2002.  The evaluation found that Lamarr was "hard line, no-nonsense, and authoritarian;" was "relatively high in aggression compared to the norm of the sample group;" and that the results "gave rise to some concerns about subject's honesty." However, the evaluating psychologist recommended Lamarr for the position, stating that he was "found to have the basic psychological qualities deemed necessary for the position sought and to reveal no features which cause significant concern at this time." Plaintiff has proffered an expert report, authored by William Gaut, which concludes that

"David Lamarr should not have been hired by the City of Newark Police Department."[2] However, the Court finds this report unpersuasive.  There is no indication in the report that Mr. Gaut is a trained and licensed psychologist or psychiatrist, nor is the test for municipal liability whether a third party would or would not have hired Mr. Lamarr. Instead, the Plaintiff is required to demonstrate that  "adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right."  *Brown*, 520 U.S. at 411.  While Lamarr's psychological profile would, upon appropriate scrutiny, reveal some negative personality traits, Plaintiff has failed to show that Lamarr's shooting of Godley was a "plainly obvious consequence" of his hiring.  *Id.*  In Brown, the Supreme Court concluded that the officer's actual convictions, including for assault and battery, were not sufficient to support a finding that, in hiring the officer, the Sheriff disregarded a known or obvious risk of injury.  *Id.* at 412.  The link between the evidence presented and the asserted constitutional violation is even more tenuous than that described in Brown, and therefore summary judgment must be granted to the City on Plaintiff's failure to screen claim.

Nor has Plaintiff established a policy or practice of inadequate psychological

---

[2]Gaut's report contains numerous conclusions of law that the court must disregard.  "Although an expert's opinion may 'embrace[] an ultimate issue to be decided by the trier of fact[,]' the issue embraced must be a factual one."  *Berry v. Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) (citing Fed. R. Evid. 704(a)).  The expert may not testify as to the ultimate issue of liability or to relevant subsidiary legal conclusions.  *Id.*

testing giving rise to the alleged constitutional violation against the Plaintiff.  The City

submitted in its pleadings a detailed description of the procedures for hiring police

officers, which are governed by the provisions of the Civil Service Act, N.J.S.A. 11A1-1,

et seq, and the regulations promulgated pursuant thereto.  N.J.A.C. 4A:1-1, et. seq.

These regulations require all potential police officers to apply to the New Jersey

Department of Personnel to take an open examination administered by the department.

Applicants who pass the examination are placed on a list of eligibles which is then

passed on to the municipality as it needs police officers.  Before candidates are

accepted for training at the Newark Police Academy they are investigated to determine

if they meet the hiring standards established by the Newark Police Department's

General Order 00-465.  The candidate must meet citizenship, age, residency, and

education requirements, and must have a valid driver's license.  In addition, his or her

criminal and disorderly persons, motor vehicle, and employment history must not be

disqualifying.  The candidate's credit history, employment, and personal references are

also considered.  The candidate is required to pass medical and psychological

examinations.  Plaintiff does not dispute the existence of these procedures, and has

failed to identify any "pattern of injuries" linked to these hiring practices.  *Brown*, 520

U.S. at 408.  Without proffering any proof of a pattern of constitutional violations,

Plaintiff cannot establish a practice or policy of inadequate psychological testing.

In short, this Court concludes that Plaintiff has presented no evidence that would

permit a factfinder to determine that the City is liable for the hiring of David Lamarr as a

police officer.  Defendants are entitled to summary judgment on the improper hiring

claims.

2.      *Failure to Train*

The Court also finds that summary judgment should be entered as to the City on

Plaintiff's failure to train claim under Section 1983.

As discussed above, for a municipality to be liable under section 1983, a plaintiff

must establish: (1) a deprivation of a constitutionally protected right; (2) resulting from a

policy, practice, or custom.  *Monell*, 436 U.S. at 691-94 (1978).  A municipality's failure

to properly train its employees and officers can constitute a "policy" or "custom" that is

actionable under section 1983 "only where the failure to train amounts to deliberate

indifference to the rights of persons with whom the police come into contact."  *Canton*,

489 U.S. at 388.  "Only where a failure to train reflects a 'deliberate' or 'conscious'

choice by a municipality– a 'policy' as defined by ... prior cases– can a city be liable for

such a failure under §1983."  *Id.* at 389.  The analysis must focus on "the adequacy of

the training program in relation to the tasks that particular officers must perform."  *Id.* at

390.  Liability cannot be predicated solely upon a showing that the municipality's

employees could have been better trained or that additional training was available

which would have reduce the overall risk of constitutional injury.  *Id.* at 391.  Rather,

there must be a deliberate or conscious choice by the municipality to not train its

employees before it may be held liable under section 1983.  Further, evidence of an

isolated incident is not sufficient to show the existence of a custom or policy.  *See, e.g.*,

*Carswell*, 381 F.3d at 244 (Liability "typically requires proof of a pattern of underlying

constitutional violations.").  An additional prerequisite to liability is a "showing that a

- 12 -

policymaker was responsible either for the policy, or through acquiescence, for the custom." *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996).

Plaintiff argues that the weapons training given by the City to Officer Lamarr was so ineffective and insufficient as to amount to a policy that was deliberately indifferent to Plaintiff Godley's rights.  Specifically, Plaintiff argues that Lamarr was permitted to take an insufficiently rigorous make-up test regarding "use of force," and that the Police Department's General Order on the Use of Force is confusing and sends the wrong message to police officers by permitting officers to utilize firearms in appropriate situations.  Plaintiff does not claim that Lamarr was not trained in the use of force, but that the training he received was inadequate.  Plaintiff also argues that the City's policy of not prohibiting the wearing of uniforms off hours constitutes inadequate training. Plaintiff submitted an expert report prepared by William T. Gaut in support of these allegations.

Plaintiff's allegations fail as a matter of law because he fails to demonstrate that the City has a policy of inadequate training, fails to demonstrate deliberate indifference, and fails to establish causation.

First, It is undisputed that Officer Lamarr received both classroom training at the Academy in the use of force, that he was tested on this training, that he received classroom training at the range while he was a recruit, and that he received semi-annual training thereafter in the use of force.  The record simply does not establish such a lack of training on the use of deadly force as to constitute a policy amounting to deliberate indifference, nor does it demonstrate a pattern of underlying constitutional

violations that should have alerted the City to an inadequate training program.  *See Carswell*, 381 F.3d at 245.  Therefore, as a matter of law, the City's training program in the use of force was not so wanting as to support any finding of deliberate indifference as to the constitutional rights of Plaintiff.

Second, Plaintiff's reading of the Newark General Order on the Use of Force is unsupported by the record, as the Order in no way endorses or condones the conduct of Officer Lamarr.  Plaintiff argues that the Newark policy authorizes officers to unholster a weapon and point a firearm "at people who have not done anything to warrant the use of deadly force."  Pl.'s Br. at 65.  This is wholly inconsistent with a plain reading of the General Order.  Newark's General Order and the Attorney General's Guidelines on use of force state:  "Pointing a firearm at a subject is an element of constructive force to be used only in appropriate situations."  The policies further state that an "officer should not unholster or exhibit a firearm" except for maintenance and training or under the following circumstances:

(1) "when circumstances create a reasonable belief that it may be necessary for the officer to use the firearm;" or

(2) "when circumstances create a reasonable belief that display of a firearm as an element of constructive authority helps establish or maintain control in a potentially dangerous situation in an effort to discourage resistance and ensure officer safety."

Further, the policy dictates that deadly force cannot be justified except where a citizen poses an immediate danger of serious injury or death to the officer or another civilian.

- 14 -

The plain reading of this order is unambiguous in restricting both the unholstering of a weapon and the use of deadly force.  No reasonable jury could find municipal liability based on the Newark General Order, because the record does not support Plaintiff's contention that the General Order is a policy endorsing Officer Lamarr's conduct.

Third, as to the allegations regarding the off-duty wearing of uniforms, Plaintiff has failed to demonstrate any official policy or custom permitting this practice.  Even if Plaintiff had established such a policy, Plaintiff did not establish a sufficient causal link between Lamarr's wearing of his uniform pants off-duty and his shooting of Godley.  A plaintiff must "establish that the government policy or custom was the proximate cause of the injuries sustained."  *Padilla*, 110 Fed. Appx. at 279.  Godley has not demonstrated that Officer Lamarr's choice of wardrobe proximately caused his injury. *See Kneipp*, 95 F.3d at 1213 (3d Cir. 1996) ("To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue.").  As such, as a matter of law, the City may not be found liable based on the allegations regarding the off-duty wearing of uniforms.

Overall, Plaintiff has not shown that the City's training programs were deficient, nor has plaintiff demonstrated that the City's training caused the alleged constitutional violations.  To the contrary, the "moving force" behind the violations appears to have been Officer Lamarr's own personal motivations.  Therefore, because Plaintiff failed to present evidence from which a reasonable jury could find a municipal policy or custom of inadequate training, deliberate indifference, and causation, the City is entitled to

summary judgment on the failure to train claim.

### 3.     *Inadequate Investigation and Supervision Claim*

Plaintiff also alleges that the City is liable for its failures in the "supervision" and "control" of Officer Lamarr.  Pl.'s Comp. at 3. Plaintiff argues that the City's failure to effectively investigate and discipline violent conduct by police officers constituted tacit approval of such conduct.  Pl.'s Br. at 68-78.  A municipality may be held liable under section 1983 "when its failure to supervise police officers reflects a policy of deliberate indifference to constitutional rights."  *Tobin v. Badamo*, 78 Fed. Appx. 217, 219 (3d Cir. 2003); *see also Montgomery v. De Simone*, 159 F.3d 120, 126-27 (3d Cir. 1998).  In order to prevail, the plaintiff must (1) identify the policy or custom; (2) fairly attribute the policy and fault for its creation to the municipality; and (3) demonstrate the necessary "affirmative link" between the identified policy or custom and the specific violation.  *See Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987) (discussing standard for municipal liability in claims of failure to supervise and investigate); *Blair v. City of Cleveland*, 148 F. Supp. 2d 894, 910 (N.D. Ohio 2000) (granting summary judgment to municipality on failure to investigate claim).

Plaintiff alleges the following: (1) Prior to September 21, 2005, the City had not promulgated a General Order establishing policies and procedures regarding the Internal Affairs Department; (2) At the time that he shot Paul Godley, Officer Lamarr had four civilian complaints pending in Internal Affairs; (3) Because of the lack of policies and procedures, complaints against officers were improperly investigated and documented; (4) The City's failure to monitor violent conduct by its police officers was

the proximate cause of Paul Godley's shooting.   In support of these allegations,

Plaintiff points to the passage of a Internal Affairs General Order on September 21,

2005 and describes the circumstances surrounding the investigation of the complaints

against Officer Lamarr.

Plaintiff makes many allegations regarding policies which the City did not have in

place regarding the police department, but, in order to establish § 1983 liability, Plaintiff

must affirmatively demonstrate an official policy or custom of deliberate indifference.

*See Tobin*, 78 Fed. Appx. at 219.  While it may be true that the City should have

instituted its official policy for internal investigations sooner, Plaintiff's allegations do not

support a finding that the City had a policy of failing to investigate police misconduct.

He points to no citizen complaints, other than the complaints against Lamarr, where the

City failed to investigate and respond to complaints against the police.  Further, it

appears that the complaints against Lamarr were being investigated in a timely manner.

Plaintiff's citation to statistics about the number of complaints that have been found to

be substantiated also do not support plaintiff's allegations.[3]  Plaintiff provides no

evidence that complaints that were dismissed were improperly investigated and should

have been sustained.  Moreover, Plaintiff's evidence demonstrates that, contrary to his

allegations, even during the time when no General Order was in place, the City and

Police Department were actively investigating citizen complaints.

_____

[3]Plaintiff states that in 2003, 133 total complaints of excessive force were filed, and 2 complaints were sustained.  In 2002, 109 complaints of excessive force were handled, and 1 was sustained.  In 2001, 124 complaints of excessive force were filed, and none were substantiated.  Pl.'s Br. at 23-24.

The court in *Cox v. District of Columbia*, 821 F. Supp. 1 (D.C. Cir. 1993), cited to by the Plaintiff, addressed the issue of delayed investigations, and held that the District of Columbia had a policy of delaying investigation and discipline, which encouraged police misconduct.  However, the plaintiff in Cox presented evidence that the review board which investigated claims of excessive force had a "systematic backlog" of complaints which caused almost all such claims to be delayed for years.  *Id.* at 19. As an example of the egregious nature of the situation presented by that plaintiff, in 1987 the board issued a list of 1,450 cases which remained unresolved.  *Id.* at 7. The court found that the "consistent and chronic delays endemic to the . . . review process", *id.* at 12, constituted a custom and practice of deliberate indifference to the rights of individuals who came into contact with the city's officers.  *Id.* at 13.  This evidence stands in stark contrast to the evidence presented by Plaintiff Godley.

Plaintiff's allegations about the City's failure to investigate police misconduct have virtually no evidentiary support in the record, and the circumstances of the investigations of the complaints against Lamarr, standing alone, do not provide sufficient proof of a policy or custom to satisfy the dictates of § 1983.  *See Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (granting summary judgment to municipality on plaintiff's failure to supervise claim because plaintiff's had not introduced any evidence beyond their allegations).  The Plaintiff here cannot establish that there was a persistent, pervasive practice, attributable to a course deliberately pursued by official policy-makers, which caused any deprivation of Godley's constitutional rights.  Accordingly, the City is entitled to summary judgment on the

failure to supervise and investigate claim.

        4.    *Discrimination Claim*

      The City has also moved for summary judgment on the allegations that the City "intentionally discriminated" against Plaintiff, contained in the Fourth Count of the Complaint.  Plaintiff does not address the discrimination claims in either his statement of undisputed facts or in his brief.  As a result, the Court must grant summary judgment to the City on this claim.  The mere allegations contained in Plaintiff's pleading are not enough.  Plaintiff must come forward with some affirmative evidence to defeat summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); *Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).  Thus, the motion is granted as to the discrimination claim.

        B.    <u>Summary Judgment Must be Granted as to the Plaintiff's State Law Claims of Negligent Hiring, Training, and Supervision</u>.

      Plaintiff has asserted state law based negligent hiring, training, and supervision claims in Count Two of the Complaint.  The City has moved for summary judgment on these claims as well.  Because the Court grants the City's motion on the merits of the claims, the Court finds it unnecessary to address whether Plaintiff's claims are barred by his failure to comply with the requirements of the New Jersey Tort Claims Act.  *See* N.J.S.A. 59:8-3.

        1.    *Negligent Hiring*

      To sustain a negligent hiring claim, the Plaintiff must demonstrate two elements. First, the Plaintiff must show that the Defendant knew or had reason to know of the

particular incompetence or dangerous aspects of David Lamarr, and could have reasonably foreseen that such qualities created a risk of harm to others. *DiCosala v. Kay*, 91 N.J. 159, 173-74 (1982). Second, Plaintiff must also prove that "through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness, or dangerous characteristics proximately caused the injury." *Id*. at 174.

As discussed above, *see supra* § III.A.1., Plaintiff has failed to demonstrate that Defendants had knowledge that Lamarr possessed any dangerous characteristics or attributes. The results of the psychiatric examination were inconclusive, and as a result, the Defendants could not have reasonably foreseen that Lamarr would pose a risk of harm to others. The record is devoid of evidence that would allow a reasonable fact finder to conclude that the City was negligent in hiring Lamarr.

2.      *Negligent Training and Supervision*

For the reasons set forth above, in the discussion in §§ III.A.2. and III.A.3., Plaintiff has also not submitted to the Court sufficient evidence to demonstrate that there are any triable issues of fact as to his common law failure to train or supervise claims.

**IV.      Newark Housing Authority**

Plaintiff asserts a § 1983 claim against the Newark Housing Authority ("NHA") as well as a common law negligence claim. The NHA moves for summary judgment on all claims asserted against it.

A.      Section 1983 Claim

- 20 -

Plaintiff alleges, in Count Four of the Complaint, that the NHA is liable for "deficient policies which caused the violation of plaintiff's rights under 42 U.S.C. § 1983." Pl.'s Br. at 79; Pl.'s Comp. at 5. Plaintiff alleges that Ada Vasquez, a security guard at the apartments where the shooting occurred, was aware that David Lamarr was a dangerous individual with violent propensities, but nevertheless permitted his presence at the apartment buildings. Further, Plaintiff contends, the NHA inadequately trained security officers regarding reporting of crime, causing Ms. Vasquez to fail to report Lamarr's behavior and permit his presence at the apartment complex.

As explained more fully above, *see supra* § III.B., for liability to attach under § 1983, Plaintiff must demonstrate not only that a constitutional violation occurred, but must "identify a municipal policy or custom" and demonstrate that such policy was the "moving force" behind the constitutional violation. *Brown*, 520 U.S. 397, 399, 403-404 (1997); *see also Sanford*, 456 F.3d at 314. A municipality's failure to properly train its employees and officers can constitute a "policy" or "custom" that is actionable under section 1983 "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388 (1989). Typically, this requires "a proof of pattern of underlying constitutional violation." *Carswell*, 381 F.3d at 244.

Plaintiff's § 1983 claim against the NHA is even more attenuated than his claim against the police department. The record fails to establish either deliberate indifference or causation. Plaintiff has not established the existence of a policy or custom of either inadequate training or of permitting crime on the premises. While he

alleges that Ms. Vasquez received inadequate training[4], a single isolated instance of poor training is not sufficient to establish a municipal policy of failing to adequately train officers. *See Canton*, 489 U.S. at 391. Moreover, Plaintiff has failed to establish proximate cause. Plaintiff argues that Ms. Vasquez should have refused Plaintiff entry onto the premises given her knowledge of his past violent tendencies. This is unsupported by the record. It is uncontradicted that Officer Lamarr frequented the apartment complex as part of his daily routine while on duty as a police officer. There is no evidence that Ms. Vasquez had the right or duty to refuse an on-duty police officer entry to the premises.

Because Plaintiff has failed to introduce evidence which would permit a reasonable jury to hold the NHA liable under § 1983, summary judgment must be granted as to Plaintiff's § 1983 claim against the NHA.

B.    Common Law Negligence Claim

The Plaintiff, in the Third Count of the Complaint, alleges that the Newark Housing Authority was negligent in that it failed to provide proper security on its premises, and that such negligence was the proximate cause of the shooting of Paul Godley. Plaintiff's pleadings can be read to assert two theories of liability: (1) the NHA failed to provide adequate security on its premises; and (2) the NHA is liable for Ada

---

[4]Plaintiff's expert, William Gaut, testified to the inadequacy of the training of Ada Vasquez in his expert report. However, this report discusses only the adequacy of Vasquez's training, not the overall training programs at the NHA, nor the polices and procedures for training NHA employees. As such, the report has no bearing on the court's determination as to whether there existed a policy or custom of inadequate training of NHA security personnel.

Vasquez's failure to report the prior violent behavior of David Lamarr.  Defendant argues that summary judgment should be granted as to both claims because the NHA is entitled to immunity under N.J.S.A. 59:5-4.

The first of Plaintiff's claims alleges that "the Newark Housing Authority failed to provide proper security" which was the proximate cause of Plaintiff's injury.  Pla.'s Br. at 80.  N.J.S.A. 59:5-4 provides: "Neither a public entity or a public employee is liable for failure to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service."  N.J.S.A. 59:5-4 (2006).  The statute codifies the traditional common law immunity provided to governmental entities for failure to provide police protection.  *Lieberman v. Port Auth. of N.Y. & N.J.*, 132 N.J. 76, 86-87 (1993).  The NHA is a public entity within the meaning of the statute.  *See* N.J.S.A. 59:1-3 ("'Public entity' includes the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State.").  While municipality entities may not be held liable for failure to provide police protection, liability is permitted "when those entities have engaged in non-governmental activities and when they have breached their duties of due care– even when those breaches involved injury to a party by a third person– as long as that injury is reasonable forseeable."  *Lieberman*, 132 N.J. at 94.  When, as here, a plaintiff alleges a failure in security by a governmental inquiry, the "trier of fact must be sure that plaintiff's claim for failure to provide a reasonably safe premises is not a disguised claim for failure to provide police protection."  *Id.*  The court must examine whether the government's conduct falls into the category of proprietary matters, such as failure to

repair steps or maintain the doors of an apartment complex, or governmental functions, such as maintenance of general police and fire protection.  *Id.*  Here, Plaintiff asserts that NHA "failed to provide proper security on its premises."  This alleged negligent action falls squarely in the governmental end of the spectrum, as it relates directly to police-protection activity.  As such, Plaintiff's claim is barred by N.J.S.A. 59:5-4.

Second, Plaintiff also alleges that the NHA should be held liable for the negligence of its agent, Ada Vasquez, in the performance of her duties as a security officer.  Plaintiff argues that Ada Vasquez had knowledge that Lamarr had previously tried to shoot his wife, had abused drugs, and was called "shooter" by colleagues in the Police Department, yet she did not report this information to the NHA.  Pla.'s Br. at 82.

Plaintiff argues that N.J.S.A. 59:5-4 does not preclude lawsuits based upon the negligent performance by an officer of his assigned duties, and thus would not provide a bar to such a claim.  However, this case is distinguishable from both *Suarez v. Dosky*, 171 N.J. Super. 1 (N.J. App. Div. 1979) or *Shore v. Housing Authority of Harrison*, 208 N.J. Super. 348 (N.J. App. Div. 1986), cited to by the Plaintiff for the proposition that a municipality may be held liable for the negligent performance by a police officer of his assigned duties.  In both *Suarez* and *Shore*, the plaintiffs alleged that the officers on the scene acted negligently.  The court in each case held that N.J.S.A. 59:5-4 does not preclude lawsuits based upon the negligent performance by an officer of his assigned duties, and thus would not provide a bar to such a claim.  Plaintiff here is not alleging that Ms. Vasquez acted negligently while at the scene, either immediately before the shooting, or in response to the shooting.  While this claim would not be barred by

N.J.S.A. 59:5-4, Plaintiff has presented no evidence that would support such a claim. To the contrary, the record indicates that Ms. Vasquez made a concerted effort to separate the two men and that she tried to escort Lamarr of the premises.

Instead, Plaintiff is essentially arguing that the NHA failed to provide adequate police protection because of the negligence of Ada Vasquez in responding to and reporting the prior behavior of Lamarr. In *Sczyrek v. County of Essex*, 324 N.J. Super. 235 (N.J. App. Div. 1999), the Court was presented with a similar factual situation. The plaintiff in that case, a Newark police officer, was shot and killed in the Essex County Court Complex while waiting to testify at a criminal trial. *Id.* at 237. Plaintiff's complaint was based in part on the alleged inadequacy of the security system. It also alleged, however, that the County had been negligent in failing to respond to warnings of a pending plan to kill the plaintiff and the judge who was presiding over the trial. *Id.* at 238. The Sczyrek court examined the statutory language of § 59:5-4, and noted that the statute, "on its face, would certainly seem to apply to this case," because the language refers to a "failure to provide police protection service," and "does not refer to a 'failure to provide' that protection because of some governmental policy or determination." *Id.* at 242. The court also examined cases applying the immunity provisions of N.J.S.A. 59:5-4, and found that those cases "generally interpreted those provisions in a manner which would lead to immunity here." In both *Lee v. Doe*, 232 N.J. Super. 569 (N.J. App. Div. 1989), and *Wuethrich v. Delia*, 155 N.J. Super. 324 (N.J. App. Div. 1978), police officers either refused to respond or refused to act the provide appropriate protection after receiving warnings and threats of criminal conduct.

The *Sczyrek* court noted that "in both [*Lee* and *Wuethrich*], the allegedly negligent performance (or non-performance) was dictated by the officers themselves.  Therefore, both the *Lee* and *Wuethrich* courts found the statutory immunity applicable, and the municipal entity free from liability.  The *Sczyrek* court found these cases indistinguishable, and likewise concluded that N.J.S.A. 59:5-4 precluded the court from holding the defendant liable.

These three cases control the issue before the Court.  Like those cases, here it is alleged that it Ada Vasquez's lack of response to signs and threats of danger that caused the Plaintiff's injury.  Accordingly, N.J.S.A. 59:5-4 bars any such claim by Plaintiff against the NHA for negligence based on the inaction of Ada Vasquez.

Because Plaintiff has presented no evidence which would permit a factfinder to determine that the NHA is liable for his injuries, the NHA is entitled to summary judgment on Plaintiff's common law negligent claim.

**V.   Officer David Lamarr**

Plaintiff claims, in Counts One and Four of his Complaint, that Officer Lamarr used excessive force in effecting his arrest in violation of his constitutional rights and should be held liable under Section 1983.  Officer Lamarr has moved for summary judgment on this claim, asserting that Plaintiff has failed to set forth credible, material facts that establish the violation of Plaintiff's rights, and, even if they were, that Officer Lamarr is entitled to qualified immunity.

As discusses above, Section 1983 provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws.  The use of excessive or

unreasonable force by police officers in the exercise of their authority, in violation of the Fourth Amendment of the Constitution, may give rise to a Section 1983 cause of action. *See, e.g.*, *Tenn. v. Garner*, 471 U.S. 1 (1985).

Qualified immunity is intended to shield government officials performing discretionary functions, including police officers, "from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A defendant has the burden of establishing that he is entitled to qualified immunity. *Id.* The Supreme Court held in *Saucier v. Katz*, 533 U.S. 194 (2001), that a claim of qualified immunity must be analyzed using a two-step inquiry. First, a District Court should examine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201; *Kopec*, 361 F.3d at 776. If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end. *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002). However, if the Plaintiff establishes a constitutional violation, the Court must then examine whether the right violated is "clearly established." *Saucier*, 533 U.S. at 201; *Kopec*, 361 F.3d at 776.

A.    Taken in the Light Most Favorable to Plaintiff, the Facts Demonstrate That Officer Lamarr's Conduct Violated a Constitutional Right.

The first inquiry necessary to assessing Officer Lamarr's claim of qualified immunity is whether the facts that Plaintiff asserts, taken in the light most favorable to him, show that Officer Lamarr violated Plaintiff's Fourth Amendment rights. To state a

claim for excessive force under the Fourth Amendment, the plaintiff must demonstrate "that a seizure occurred and that it was unreasonable." *Kopec v. Tate*, 361 F.3d at 775.[5]

Here, Officer Lamarr does not assert that the shooting of Paul Godley did not constitute a seizure. *See* Def. Lamarr's Br. at 15 ("Officer Lamarr cannot dispute that he used force to restrain Plaintiff."). Thus, the only issue is whether the force used to effect that seizure was "reasonable." Defendants argue that Officer Lamarr's use of force was justified based on the totality of the circumstances.

Under the reasonableness prong, the Court must examine "whether under the totality of the circumstances, 'the officer's actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" *Kopec*, 361 F.3d at 776 (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Therefore, if a use of force is objectively reasonable, an officer's good faith is irrelevant and any bad faith motivation of his part is immaterial. *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003). In assessing reasonableness, a court may consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Kopec*, at 776-77 (citing *Graham*, 490 U.S. at 396). A court might also take into account "the possibility that the

---

[5]In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held that excessive force claims should be analyzed under the Fourth Amendment reasonableness standard rather than the Fourteenth Amendment substantive due process standard.

persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Id.* at 777 (citing *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)). The "objective reasonableness" test of an officer's actions is meant to give "deference to the judgment of reasonable officers on the scene," and the Court is "cautioned against the 20/20 vision of hindsight." *Saucier*, 533 U.S. at 205; *Phong Duong v. Telford Borough*, 186 Fed. Appx. 214, 217 (3d Cir. 2006). "Reasonableness under the Fourth Amendment should frequently remain a question for the jury, however, defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Kopec*, 361 F.3d at 777 (internal citations omitted).

Godley, the Plaintiff, alleges that Lamarr, while off-duty, alleged in a argument with Plaintiff regarding a personal issue, specifically his relationship with Ada Vasquez. Lamarr became aggressive and violent during this argument and cursed repeatedly as Godley. Godley alleges that he never threatened to kill Officer Lamarr and remained calm during the argument, but that Lamarr threatened to kill Godley. Plaintiff refused to leave the scene of the argument, and stated that he would not "run and hide." Plaintiff further alleges that after the argument, Officer Lamarr walked to his car and retrieved his weapon. Next, Plaintiff contends, Lamarr walked around his car with his weapon drawn, cursed at Godley, and then shot Godley once in the chest while Godley was

attempting to raise his arms to surrender.  Plaintiff alleges that at no time did he strike Officer Lamarr, threaten to physically assault Officer Lamarr, or appear to reach for a weapon.

It is well-established that a law enforcement officer "may use deadly force when the officer has sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others."  *Garner*, 471 U.S. at 11.  However, based on the facts presented, a jury might believe that Godley posed no imminent or actual threat, nor was he trying to evade capture, and as such, Officer Lamarr's shooting constituted excessive force.  Officer Lamarr faced an unarmed suspect who did not physically assault nor threaten to physically assault the officer or others.  Moreover, as alleged by Godley, Officer Lamarr did not instruct Godley to surrender or drop any weapons before shooting, but instead shot Godley immediately after retrieving his weapon.  This case is similar to *Curley v. Klem*, 298 F.3d 271 (3d Cir. 2002).  There, the plaintiff claimed he was shot even though his weapon was pointed away from the officer, even though he never aimed the weapon at the officer, even though he turned away from the officer to retreat, and even though there was "ample evidence" suggesting he was not a suspect. The Third Circuit held that a reasonable fact finder could, under those circumstances, conclude the plaintiff's Fourth Amendment rights were violated.  Here, Plaintiff's allegations, if proven, present an even stronger case for a finding of excessive force. The officer in Curley, unlike the officer here, was in hot pursuit of a suspect.  In addition, Officer Lamarr was not even on duty– he was engaged in an off-duty argument about a personal matter.  Plaintiff's recitation of the facts, if credited, would establish that Officer

- 30 -

Lamarr's use of force was excessive in violation of the Fourth Amendment.

Officer Lamarr contends that the use of force was reasonable because (1) Plaintiff had previously threatened him and challenged him to a fight; (2) Plaintiff failed to express deference to Officer Lamarr's authority as a police officer; and (3) Officer Lamarr believed that Plaintiff was reaching for a weapon.  However, these facts are disputed by Plaintiff, and at this stage of the qualified immunity analysis, the Court must consider only the facts alleged by Plaintiff, taken in the light most favorable to him.  As such, while the Court recognizes "the importance of resolving immunity questions at the earliest possible stage of litigation," *Curley*, 289 F.3d at 278, here the existence of disputed, historical facts material to the objective reasonableness of Officer Lamarr's conduct gives rise to a jury issue.

B.     Defendant Lamarr is Not Entitled to Qualified Immunity Because His Actions Violated a "Clearly Established Right" of Plaintiff.

Having found that the facts alleged by Godley demonstrate the violation of constitutional right, the Court next must examine whether the right violated is "clearly established."  *Saucier*, 533 U.S. at 201; *Kopec*, 361 F.3d at 776.  "The relevant dispositive inquiry" in making this determination is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.  "If officers of reasonable competence could disagree on" the constitutionality of the conduct, "immunity should be recognized."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Supreme Court has held the use of deadly force "[w]here the suspect poses

no immediate threat to the officer and no threat to others" is not justified.  *Garner*, 471

U.S. at 11.  This constitutional right is "well established."  Although the Supreme Court

articulated its holding in Garner in the context of an officer pursuing a suspect fleeing

arrest-rather than, as here, an officer using deadly force in possible self-defense- the

Third Circuit has adopted a "broad view of what constitutes an established right of

which a reasonable person would have known." *Kopec*, 361 F.3d at 778.  The factors

relevant to the excessive force analysis, *see supra* § V.A., are well-recognized, *see*

*Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006), and as such "the contours of the

right [are] sufficiently clear that a reasonable official would understand that what he is

doing violates that right." *Saucier*, 533 U.S. at 202.

Officer Lamarr also claims that, under the Saucier analysis, even if the right has

been "clearly established," his mistake was nonetheless a "reasonable one" as a matter

of law.  *See Saucier*, 533 U.S. at 206.  Disputed issues of facts as to Godley's behavior,

movement, and dialogue immediately prior to and at the time of the shooting must be

resolved before a court can determine that it would have been clear to a reasonable

officer that Officer Lamarr's conduct was unlawful.  Provided factual disputes resolve

the immunity questions in Godley's favor, if, at trial, Lamarr is able to prove he held a

mistaken belief as to the law's requirement, he will be able to escape liability.  *See*

*Phong Duong*, 186 Fed. Appx. at 219.

Plaintiff has satisfied his burden of showing evidence that, if believed, would

demonstrate a constitutional violation and has demonstrated a genuine issue of

material fact as to whether Officer Lamarr used excessive force.  In addition, Plaintiff

has demonstrated that Lamarr's conduct, if proven, violated a "clearly established" constitutional right.  As such, Defendant Lamarr is not entitled to qualified immunity as to the seizure of Paul Godley, and his motion for summary judgment is denied.

**V.      Conclusion**

For the reasons set forth above, this Court will grant in part and deny in part Defendants' Motions for Summary Judgment.  The claims against the City of Newark and the Newark Police Department will be dismissed.  The claims against the Newark Housing Authority will also be dismissed.  However, the claims against Defendant Lamarr individually will remain.


                                                           /s/ Stanley R. Chesler

                                                          Stanley R. Chesler, U.S.D.J.

Dated: January 26, 2007